435 Cent. Park W. Tenant Assn. v Park Front Apts., LLC (2018 NY Slip Op 05625)





435 Cent. Park W. Tenant Assn. v Park Front Apts., LLC


2018 NY Slip Op 05625


Decided on August 2, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 2, 2018

Richter, J.P., Manzanet-Daniels, Webber, Oing, Moulton, JJ.


452296/16 -1689

[*1] 435 Central Park West Tenant Association, et al., Plaintiffs-Respondents-Appellants,
v
Park Front Apartments, LLC, Defendant-Appellant-Respondent, 
National Leased Housing Association, Amicus Curiae.


Quinn Emanuel Urquhart & Sullivan, LLP, New York (Kathleen M. Sullivan of counsel), for appellant-respondent.
The Legal Aid Society, Harlem Community Law Office, New York (Jason Wu of counsel), for respondents-appellants.
Herrick, Feinstein LLP, New York (Scott E. Mollen of counsel), for amicus curiae.



Order, Supreme Court, New York County (Carol R. Edmead, J.), entered July 24, 2017, which, to the extent appealed from as limited by the briefs, denied defendant owner's motion for summary judgment dismissing the cause of action for a declaration that plaintiff residents' apartments are rent stabilized, and for a declaration, upon its counterclaim, that the subject building is and has always been subject to federal preemption from local rent regulation and that the "HUD Handbook" does not apply to the building, and granted plaintiffs' motion for summary judgment declaring that the building was subject to the Rent Stabilization Law as of December 29, 2000, and so declared, unanimously modified, on the law, to grant defendant's motion for summary judgment on its counterclaim to the extent of declaring that the Rent Stabilization Law was preempted through April 11, 2011, and that the HUD Handbook ceased to apply to the building as of December 29, 2000, and it is so declared, to grant plaintiffs' motion to the extent of declaring that the building was subject to the Rent Stabilization Law as of April 12, 2011, and it is so declared, and otherwise affirmed, without costs.
In 1969, the building site, which consisted of nine tenement buildings, was gut renovated to create a single apartment building for low- and moderate-income families. Owner financed the project with a secured note and a below-market interest rate mortgage subsidized by the Federal Housing Administration, the predecessor to the U.S. Department of Housing and Urban Development (HUD). There is no dispute that the mortgage would mature in April 2011. As long as the building was subject to the HUD mortgage, the Rent Stabilization Law of 1969 (RSL) (Administrative Code of City of NY § 26-501 et seq.) was expressly preempted, pursuant to HUD regulations (see 24 CFR 246.21).
In 1980, owner obtained a Flexible Subsidy Grant from HUD and entered into a related Financial Assistance Contract. The Financial Assistance Contract required owner to agree to maintain the low- and moderate-income character of the project until April 11, 2011. Under section 201 of the Housing and Community Development Amendments of 1978 (HCDA), as amended in 1979, 12 USC § 1715z-1a, HUD could provide additional financial assistance for the project. In order for the project to receive further financial assistance, HUD must determine that such assistance "is necessary and ... will restore or maintain the financial or physical soundness of the project and maintain the low- and moderate-income character of the project, and [that] the [*2]owner has agreed to maintain the low- and moderate-income character of such project for a period at least equal to the remaining term of the project mortgage" (12 USC § 1715z-1a[d][1]).
On or about December 29, 2000, owner of the subject building paid off the below-market-interest-rate mortgage issued by HUD. After the mortgage was paid off, the building became subject to a "Use Agreement" with HUD, which had been entered into in connection with owner's mortgage payoff. The Use Agreement referenced owner's Financial Assistance Contract with HUD and receipt of the Flexible Subsidy Grant, and provided that "in connection with [owner's] prepayment of the Mortgage and the discharge [of] the Regulatory Agreement, the Housing Owner has agreed to continue the low and moderate income affordability restrictions on the Project ... until April 1, 2016." The Use Agreement also provided that it "shall continue HUD's preemption of state and/or local rent regulation[s]." Plaintiffs assert federal preemption of the RSL ended when owner prepaid the mortgage in 2000, and, in any event, there is no conflict between the requirement that owner maintain the low- and moderate-income restrictions and the RSL so that federal preemption is no longer compelled. Defendant owner takes the position that the Use Agreement continued federal preemption of the RSL to the present day and will continue until 2026.
The Supremacy Clause of article VI of the US Constitution, provides for federal preemption of state or local law where there is express or implied congressional intent for preemption (Doomes v Best Tr. Corp., 17 NY3d 594, 601 [2011]). Express preemption is found in the plain language of a federal statute or regulation (id.). There is implied preemption "when either the Federal legislation is so comprehensive in its scope that it is inferable that Congress wished fully to occupy the field of its subject matter ... or because State law conflicts with the Federal law" (id. [internal quotation marks omitted]). Conflict preemption "arises when either compliance with both federal and local laws is physically impossible or when the local law stands as an obstacle to the accomplishment of the full congressional purposes and objectives" (Mother Zion Tenant Assn. v Donovan, 55 AD3d 333, 335 [1st Dept 2008], lv dismissed in part, denied in part 11 NY3d 915 [2009]).
While the RSL's application to the building was no longer expressly preempted upon prepayment of the mortgage in December 2000, HUD is authorized, under the HCDA, as codified in 12 USC § 1715z-1a, to issue rules and regulations to carry out the purpose, inter alia, of maintaining a project's low- to moderate-income character. In connection with prepayment of the mortgage, owner agreed to continue federal regulation of the building by agreeing to maintain the project's low- to moderate-income affordability restrictions until April 2011, as provided in the Use Agreement. The Use Agreement, in and of itself, does not preempt the RSL. However, it continued owner's prior commitment to the Flexible Subsidy Grant and Financial Assistance Contract's low- to moderate-income restrictions under 12 USC § 1715z-1a. In view of the differences between the RSL's rent regulation rules and the HUD rules as embodied in the "Use Agreement," the RSL must be preempted because it would be "impossible for [owner] to comply with both state and federal requirements" (Doomes v Best Tr. Corp., 17 NY3d at 603 [internal quotation marks omitted]). Also, by continuing owner's commitment under the Flexible Subsidy Grant and Financial Assistance Contract by way of the Use Agreement, HUD clearly intended to maintain the affordability restrictions on the property until the date when the mortgage term would have expired in April 2011. Any attempt to apply the RSL before that date would be in conflict with HUD's intent to maintain this project's low- and moderate-income restrictions. Thus, the RSL is preempted to prevent the frustration of a "significant objective of the federal regulation" (Williamson v Mazda Motor of Am., Inc., 562 US 323, 326 [2011]).
The cases plaintiffs rely on for their argument that the RSL automatically applies after prepayment of a HUD mortgage are inapposite as those cases involved a cessation of all federal oversight of the projects at issue upon prepayment of the mortgage (see TOPA Equities, Ltd. v City of L.A., 342 F3d 1065 [9th Cir 2003]; Matter of 221 W. 16th Realty v New York State Div. Of Hous. & Community Renewal, 277 AD2d 81 [1st Dept 2000]; 223 Chelsea Assoc. v Dobler, 189 Misc 2d 170 [App Term, 1st Dept 2001]). Under the circumstances of this case, owner agreed to further federal oversight of the project and building in connection with HUD allowing owner to prepay the mortgage.
While we find that the RSL was preempted as to the subject building through April 11, 2011, defendant owner is not entitled to a declaration that the RSL is preempted for the duration of the Use Agreement. Owner fails to demonstrate how HUD had the authority to extend preemption of the RSL beyond April 11, 2011, to 2016 and again to 2026. Accordingly, we limit the declaration in defendant owner's favor to April 11, 2011, and declare in plaintiffs' favor that the building was subject to the Rent Stabilization Law as of April 12, 2011.
As long as the building was a project financed by a HUD mortgage, it was subject to the HUD Handbook, based on that loan and the terms of the related Regulatory Agreement. However, once the loan was paid off and the Regulatory Agreement terminated, the building ceased to be such a project. Plaintiffs failed to identify any continuing basis for applying the HUD Handbook to a
building that had since been regulated pursuant to the terms of the Use Agreement requiring the preservation of low-income housing.
M-1689 — 435 Central Park West Tenant Association, et al. v Park Front Apartments, LLC
Motion for leave to file amicus curiae brief granted, and brief deemed filed.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 2, 2018
CLERK